```
                    UNITED STATES DISTRICT COURT         FILED
                   NORTHERN DISTRICT OF ALABAMA
                       NORTHWESTERN DIVISION          99 JUN 14 AM 11:27

                                                       U.S. DISTRICT COURT
                                                        N.D. OF ALABAMA
MCINTAKE, L.L.C.,               )
VIRGIL MCGUIRE,                 )
                                )
      Plaintiffs,               )
vs.                             )    Civil Action No. CV 99-S-0950-NW
                                )
SAM GARRETT, E.S. GARRETT,      )
INC., THE AUTO SEAL CO., INC.,  )                        CM
DOUG GARRETT, DOUG GARRETT      )                     ENTERED
D/B/A "WATERWAY,"               )
                                )                     JUN 1 4 1999
      Defendants.               )
```

## MEMORANDUM OPINION

This action is before the court on plaintiffs' motion for preliminary injunction and defendants' motion to dismiss. Upon consideration of the pleadings, evidence, briefs, and oral arguments of counsel, this court concludes it lacks subject matter jurisdiction.

### I. THE INVENTION

Plaintiff Virgil McGuire was issued Patent No. 5,113,889 for a "floating intake for transport of liquid from a fixed depth below the surface of a reservoir" on May 19, 1992.[1] "The device of the invention may be made in a variety of sizes and used to supply water to fire hydrants in rural areas, for irrigation, or to provide water for livestock."[2] In part, McGuire's patent describes

---
[1] See Plaintiffs' Exhibit 11.
[2] *Id.*, at 2.

his invention as follows:

### ABSTRACT
Water is supplied from a preselected depth in a body of water by an intake held at the preselected depth by a stem connected to a float which rides near the surface of the water. The stem is weighted to maintain a desired orientation of the device in the body of water. A guide is provided in the body of water to maintain the horizontal position of the intake means.

### FLOATING INTAKE FOR TRANSPORT OF LIQUID FROM A FIXED DEPTH BELOW THE SURFACE OF A RESERVOIR

### TECHNICAL FIELD
This invention relates to the art of water supply and conservation. In particular, the invention is a floating intake for supply of water from a pond.

### BACKGROUND
It is often desired to withdraw water from a pond or other accumulation of water. This is accomplished in a variety of ways. For example, U.S. Pat. No. 3,927,534 (Larson) shows an intake which is fixed to the bottom of a body of water and thus supplies water from a location fixed with respect to the bottom of the body. U.S. Pat. No. 4,405,458 (McHugh, Jr.) Shows a weir which floats on the surface of the body and, thus, supplies water from the top of the body. Other supply devices are known which supply water from fixed locations but which may have float controlled valves to stop the flow of water when the level of the body is too high or too low.

One problem faced by water and soil conservation engineers is that the water in a pond varies as a function of the depth of the water. At increased depths, for example, the oxygen content of the water may be too low, while at shallow depths, the algae or other plant life growth may be significant enough that the water is not useful. Accordingly, it is often desirable to supply water from a selected depth.

### SUMMARY OF THE INVENTION
In accordance with the invention, a floating water intake is provided which supplies water from a selected depth below the surface of the water. The intake comprises a float

2

which rides on the surface of the body of water, a weighted stem which is attached to the float and extends into the body of water, and an intake grate and supply pipe connected to the weighted stem. The weighted stem maintains the orientation of the device and holds the intake grate a distance below the float which is determined by the length of the stem. Because the float rides on the surface of the water, the intake always supplies water from the predetermined depth.

The depth is chosen such that the water has a selected quality. For example, the device of the invention has been used to recirculate waste water by placing the device of the invention in a body of waste water at a level that the plant life on the surface of the water is avoided and the water has an adequate amount of oxygen. The depth may, for example, be about thirty inches. Other uses may require supply water from other depths.[3]

## II. THE EXCLUSIVE MANUFACTURING AGREEMENT

McGuire licensed his patent to "McIntake, L.L.C." on April 19, 1995. McIntake thereafter entered into an "exclusive manufacturing agreement" with E.S. Garrett, Inc. (hereinafter referred to simply as "Garrett"). Garrett was formed by E.S. "Sam" Garrett, its sole shareholder and director, for the singular purpose of manufacturing McIntake products.[4] The initial term of Garrett's agreement was five years, but it contained an option to extend the relationship for an additional ten years. Garrett was required to provide all molds for production of the component parts of the McIntake "dry hydrants" and "water management systems" in return for 50% of the

---

[3] *Id.*, at 1-2.

[4] Sam Garrett also owns "Auto Seal Company," a manufacturer of molded rubber products. (*See* Plaintiffs' Exhibit 13: Auto Seal Catalog.) Both Auto Seal and E.S. Garrett, Inc. are housed in the same building, located at 805 Missouri Street in Tuscumbia, Alabama.

3

gross profits from all sales. Garrett actually manufactured only some of the McIntake components, however: *e.g.*, the "snap on" dry hydrant cap and "strainer" discussed *infra*; the remainder were subcontracted to other companies unrelated to Garrett. Other duties imposed upon Garrett by the terms of the agreement included the following: Garrett was required to disclose its actual manufacturing costs for each component prior to production; Garrett was required to pay Virgil McGuire a manufacturing royalty fee for each unit manufactured[5]; and, Garrett agreed that, upon termination of the agreement, it would not render services to any competitor of McIntake for a period of five years.

The parties to the original contract executed an "addendum" on August 15, 1995, by the terms of which Sam Garrett's son, Doug, became the exclusive "sales representative" for McIntake products. Doug Garrett thereafter, with the permission of McIntake, established an account with Kochek, Inc.[6] for the distribution of Kochek products. He produced a "McIntake Company" catalog listing both Kochek and McIntake products.[7] The catalogue essentially is a reprint of the Kochek cataglogue, with McIntake "super" and

---

[5] *See* Plaintiffs' Exhibit 123, Exclusive Manufacturing Agreement at ¶ 5.
[6] Kochek Co., Inc., is a manufacturer of fire protection products.
[7] Plaintiffs' Exhibit 24.

4

"conventional" dry hydrant units depicted on two unnumbered pages inserted between Kochek pages 2 & 3, and the McIntake "water management system" described on two unnumbered pages inserted between Kochek pages 14 & 15. The McIntake "super dry hydrant unit" consists of five components: a floating mechanism; a hose assembly; a sign; a dry hydrant assembly; and, a strainer.[8] The "conventional dry hydrant unit" differs from the "super" unit only in the omission of a floating mechanism, and the substitution of a pipe to support the strainer in a stationary location within the reservoir. Similar conventional units are sold by McIntake's competitors.[9]

McIntake sold "super" dry hydrant units to the City of Hamilton, Alabama, and "conventional" units to the State of South Carolina. McIntake also participated in a competitive bidding process to provide dry hydrants to the State of Texas. McIntake initially was awarded the Texas contract, but ultimately was dropped from the vendor list before the contract was signed.

Doug Garrett terminated his sales agreement on September 9, 1998.

---

[8] The strainer is described as: "Pre-formed slots four times the area of the pipe with permanently attached cap to withstand back-flushing required by ISO." Plaintiffs' Exhibit 24.

[9] *See* Defendants' Exhibit 3: Schlumberger Water — Rural Water Delivery System Catalog.

Plaintiffs allege Garrett breached its manufacturing agreement by failing and refusing to disclose actual fixed costs for the manufacture of McIntake products, and that it fraudulently inflated the cost figures ultimately supplied. Plaintiffs also allege Doug Garrett formed another company for the purpose of engaging in direct competition with McIntake before Garrett terminated his sales agreement,[10] and that he is selling component parts of the patented water delivery system[11] under the trade name of "Waterway Company."[12]

## III. DISCUSSION

Plaintiffs assert a claim for patent infringement under 35 U.S.C. § 271,[13] and a trademark infringement claim under 15 U.S.C. § 1114.[14] Therefore, if this court possesses subject matter

---

[10] See Plaintiffs' Exhibit 28: Southeastern Association RC&D Councils Annual Meeting Registration form.

[11] See Plaintiffs' Exhibits 41-43: photographs of Waterway products sold to the State of Mississippi.

[12] See Plaintiffs' Exhibit 25: Waterway catalog.

[13] 35 U.S.C. § 271 provides in pertinent part:

(a) Except as otherwise provided in this title, whoever without authority makes, uses, or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

[14] 15 U.S.C. § 1114 provides in pertinent part:

(1) Any person who shall, without consent of the registrant —
    (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

6

jurisdiction, it does so only under 28 U.S.C. § 1338[15]: the parties concede this court lacks diversity jurisdiction under 28 U.S.C. § 1332, since all parties are citizens of the State of Alabama.[16]

"It has long been clear, notwithstanding the substantial federal interest in patent matters, that there is no exclusive federal jurisdiction over questions arising under the patent laws; only cases so arising may be brought in the federal courts." *Milprint, Inc. v. Curwood, Inc.*, 562 F.2d 418, 420 (7th Cir. 1977) (citing *Pratt v. Paris Gas Light & Coke Company*, 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1897)). As a general rule, "a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent, is not a suit under the patent laws of the United States, and cannot be maintained in a Federal court as such." *Luckett v. Delpark, Inc.*, 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70

---

...

shall be liable in a civil action by the registrant for the remedies hereinafter provided. ...

[15] 28 U.S.C. § 1338 reads in pertinent part:

(a) The district court shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the States in patent, plant variety protection and copyright cases.

[16] See Complaint, Document No. 1, at ¶¶ 1-7; Answer, Document No. 11, at ¶¶ 1-7.

7

L.Ed. 703 (1926).

During testimony before this court, McGuire emphasized four aspects of his invention that allegedly made it sufficiently different to merit a patent: (1) water is supplied to a fire hydrant from a predetermined depth of (and place within) a pond, lake, or other reservoir for the purpose of ensuring that it will contain a minimal amount of aquatic plant life, debris, silt, or other organic matter that might contaminate or clog the pumping mechanism of a fire engine; (2) the openings in the intake device, through which water initially is drawn from the reservoir, are in the shape of a "grate," as opposed to round orifices,[17] thereby minimizing or eliminating the "vortexing" that occurs when water is pulled through circular openings and, concomitantly, maximizing the efficiency of the pumping device; (3) the conical shape of the plastic "strainer" through which water initially is filtered[18]; and (4) the neoprene-based compound used to make the flexible "snap on cap" covering the opening in the dry hydrant assembly,[19] making it

---

[17] An example was exhibited to the court, but not offered into evidence. See, nevertheless, the photograph admitted as Plaintiffs' Exhibit 42. See also Plaintiffs' Exhibit 24, at 3 (photograph of McIntake "Super Dry Hydrant Unit").

[18] An example was exhibited to the court, but not offered into evidence. See, nevertheless, the two photographs collectively admitted as Plaintiffs' Exhibit 43.

[19] An example was exhibited to the court, but not offered into evidence. See, nevertheless, the five photographs collectively admitted as Plaintiffs' Exhibit 41.

· 8

far easier and quicker for a fireman to remove than a traditional metal, or hard plastic cap.[20]

Close analysis of McGuire's patent establishes, however, that (3) and (4) are in no way or place described, and (2) is mentioned only in passing: see, e.g., Plaintiff's Exhibit 11, at page 2, column 2, lines 48-50, stating that "[t]he intake **10** comprises a PVC coupling **30** (e.g., 4 inch diameter) and a grate insert **32**." The boldface numbers in the foregoing quote correspond to components depicted in two drawings incorporated into McGuire's patent, and reproduced on the following page.

---

[20] The truth of this assertion was inadvertently established by defendants' attorney during hearing, when he found it impossible to remove by hand the "Waterway" dry hydrant cap made of an inflexible material.

9



U.S. Patent — May 19, 1992 — 5,113,889

FIG. 1

FIG. 2

It should be observed that the slotted openings of McGuire's "grate insert 32" are <u>not</u> depicted in the drawings, nor are the conical strainer (3) or the neoprene "snap on cap" (4). As a consequence, this court concludes that McGuire's patent covers only (1), and that is a "process."[21] The individual component parts of that "process" are not patented.

Patents such as the one at issue here are known as "combinations."

> A combination is a union of elements, which may be partly old and partly new, or wholly old or wholly new. But whether new or old, the combination is a means — an invention — distinct from them. ... One element is not the combination. Indeed, all of the elements are not. To be that — to be identical with the invention of the combination — they must be united by the same operative law. ... If anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element,

---

[21] As noted in Black's Law Dictionary 1205 (6th ed. 1990), in patent law the term "process" describes:

> An art or method by which any particular result is produced. An act or series of acts performed upon the subject-matter to be transformed or reduced to a different state or thing. A means or method employed to produce a certain result or effect, or a mode of treatment of given materials to produce a desired result, either by chemical action, by the operation or application of some element or power of nature, or of one substance to another, irrespective of any machine or mechanical device; in this sense a "process" is patentable, though, strictly speaking, it is the art and not the process which is the subject of patent. Broadly speaking, a "process" is a definite combination of new or old elements, ingredients, operations, ways, or means to produce a new, improved or old result, and any substantial change therein by omission, to the same or better result, or by modification or substitution with different function, to the same or better result, is a new and patentable process.

11

separately viewed, is within the grant.

*Deepsouth Packing Co. v. Laitram Corporation*, 406 U.S. 518, 528, 92 S.Ct. 1700, 1707, 32 L.Ed.2d 273 (1972) (internal citations and quotation marks omitted). "[A] patent on a combination is a patent on the assembled or functioning whole, not on the separate parts." *Id.*

> The fact that an unpatented part of a combination patent may distinguish the invention does not draw to it the privileges of a patent. That may be done only in the manner provided by law. However worthy it may be, however essential to the patent, an unpatented part of a combination patent is no more entitled to monopolistic protection than any other unpatented device.

*Mercoid Corporation v. Minneapolis Honeywell Regulater,* 320 U.S. 680, 684, 64 S.Ct. 278, 280, 88 L.Ed. 396 (1944).

The Supreme Court has consistently held that an "owner of a patent may not employ it to secure a limited monopoly of an unpatented material used in applying the invention." *Mercoid Corporation v. Mid-Continent Inv. Co.*, 320 U.S. 661, 664, 64 S.Ct. 268, 271, 88 L.Ed. 376 (1944). The Court also has said that "[n]o element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be." *Aro*

12

*Manufacturing Co. v. Convertible Top Replacement Co., Inc.*, 365 U.S. 336, 345-346, 81 S.Ct. 599, 604, 5 L.Ed.2d 592 (1961).

Upon consideration of the foregoing principles, this court concludes that the evidence before it does not demonstrate a viable claim for patent infringement.

Even so, plaintiffs also allege that Doug Garrett, doing business as "Waterway Company," infringed McIntake's registered trademark in violation of 15 U.S.C. § 1114.[22] Plaintiffs argue the hydrant cap bearing the Waterway logo is evidence of "passing off."

"[T]o prevail on a trademark ... infringement claim, a plaintiff must show (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." *Lone Star Steakhouse & Saloon v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997). The first element is undisputed. Plaintiffs do not properly allege the second element, however. Plaintiffs do not allege the Waterway <u>logo</u> or <u>mark</u> is confusingly similar to that of McIntake. Instead, they argue that Waterway sells similar <u>products</u>. Plaintiffs' assertions therefore do not state a claim for trademark infringement.

---

[22] *See* Plaintiffs' Exhibit 27: Certificate of Registration of Trademark; *see also* note 17 *supra*, for the relevant text of 15 U.S.C. § 1114.

13

## IV. CONCLUSION

This court accordingly lacks subject matter jurisdiction and the complaint is due to be dismissed, but without prejudice to plaintiffs' right to refile their state law claims in an appropriate forum. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 14th day of June, 1999.

_____
United States District Judge

14